[No..21648. Department Two. July 19, 1929.]

J. S. MOSER, *Respondent,* v. NEW AMSTERDAM CASUALTY COMPANY, *Appellant.*[1]

*J. Y. C. Kellogg,* for appellant.

*Chas. W. Johnson,* for respondent.

MILLARD, J.—Alleging fraudulent representations by the broker, the plaintiff refused to consummate a real estate exchange agreement, and instituted this action to recover on the broker's bond the earnest money deposit converted by the broker. The cause was tried to the court without a jury, resulting in findings and judgment in favor of the plaintiff. The defendant appeals.

The facts, as found by the trial court, are substantially as follows:

[1]Reported in 279 Pac. 581.

In October, 1927, A. A. Said, a licensed real estate broker for whom appellant is surety under Rem. 1927 Sup., § 8340-10, commenced negotiations for an exchange of properties between Ralph M. Blair and J. S. Moser. One of the properties Moser was to receive from Blair in exchange for Seattle property was a residence in Los Angeles, California, represented to be rented at that time for one hundred dollars a month. Respondent's check for five hundred dollars payable to the Seattle Realty Exchange, which is the name used by Said in the conduct of his business, was delivered to Said to be cashed and paid to Blair, as liquidated damages, if the California property was as represented and Moser breached the agreement to exchange. It was orally agreed that respondent was to communicate with his brother in California for verification of the representation as to the rental value of the Los Angeles property. Pending receipt of that information, the check was not to be cashed. When respondent was informed by his brother that the property was rented for fifty-seven dollars and fifty cents a month, he demanded return of the check and rescinded the agreement. Discovering that Moser had been informed as to the falsity of the representations, Said cashed the check, contrary to the agreement of the parties. The trial court concluded from the findings of fact that Moser was entitled to recover from Said's surety for conversion of the five hundred dollars.

Appellant argues that the respondent is bound by the written contract; that all antecedent and contemporaneous negotiations or agreements were merged in the written contract; and that the objections to the introduction of all claimed prior agreements or representations should have been sustained.

Under the written contract, Blair agreed to convey to Moser certain property, including a residence in

California, in exchange for Seattle property owned by Moser. The residence is described in the agreement, wherein is recited the amount of the mortgage, assessments and taxes due on the property, but no mention is made of the rental value or whether the residence had ever been rented. True, the respondent introduced in evidence, over appellant's objection, an undated typewritten statement entitled ''Moser-Blair Deal,'' in which each of the properties of both parties covered by the exchange agreement is described. In that statement is the recital that the California residence ''rented for $100 per month.'' Said testified that Blair prepared the statement prior to the execution of the exchange agreement. A pertinent provision of the exchange agreement is the following:

''It is expressly understood that the first (Blair) and second (Moser) parties are making this agreement upon their own knowledge and information gained from each other and from other sources, and that the third parties (Said, who operated as the Seattle Realty Exchange) have not and do not make any representations as to values or facts concerning any of the said property.''

Respondent contends, however, that this action is not upon the contract: ''We are setting up fraud in obtaining this five hundred dollars and annulling the contract. This is a straight tort action.''

''Where the cause of action or defense is founded on the tort, and not on the contract, the writing being the mere result of the fraud or deceit for which damages or recoupment is sought, the so-called 'parol evidence' rule has no application.'' Jones Commentaries on Evidence (2d ed.), § 1517.

''For the purpose of proving fraud sufficient for recovery or to avoid the writing, verbal statements which are material and fraudulent, although made before or at the same time with the written agreement,

130

may be proved. In such case the rule that prior negotiations are merged in the written agreement does not apply." Jones Commentaries on Evidence (2d ed.), § 1519.

 Accepting respondent's theory, the testimony must be clear and convincing in order to support a judgment as for a fraudulent representation. Not only must the representation be proved, but the falsity of the representation must be established. What are the facts?

Respondent endeavored to prove that Said represented to him that a monthly rental of one hundred dollars was received from the California property, and that, pending verification by Moser's brother in Los Angeles of that representation, the earnest money check would not be cashed. Over objection of appellant, the respondent introduced in evidence a letter and a telegram from respondent's brother in Los Angeles to the effect that the property had been rented for fifty-seven dollars and fifty cents a month; that it had never rented for one hundred dollars. This is the only evidence that the property was rented for less than one hundred dollars.

The letter and telegram were mere hearsay, having no probative value, and should have been excluded. Obviously, the fact that hearsay appears in the form of a letter or telegram would not render it admissible.

As to the objections to hearsay evidence generally:

"They are forcibly illustrated, and the general rule is well summarized, in the oft-quoted opinion of Fletcher, J., in a celebrated Massachusetts case. To admit hearsay (observes the learned judge) would be to admit evidence without the sanction of an oath, without cross-examination, and without those tests of truth which the law in general so wisely requires. There must, of necessity, be some general rule or principle of the law on the subject; and if mere declara-

tions should be admitted in one case, they must be in every case. If the declarations of one person are admitted, the declarations of every other person must also be admitted, and the trial of issues would be embarrassed and justice obstructed and defeated by innumerable unfounded and conflicting declarations and statements. Parties would be defrauded of their rights and of their property by loose, inconsiderate, or ill-disposed assertions or remarks. The danger that casual observations would be misunderstood, misremembered, and misreported, increases the number and force of the objections to the admission of hearsay. The law, therefore, in its wisdom, rejects hearsay, regardless of whether it is written, verbal or acted. There can be no distinction made between the admission of a witness that what he states was told to him verbally by the real witness of it and an admission that it was written to him by such real witness; nor can there be any distinction between such verbal account and a reproduction by physical acts. The guiding rule sustaining the objection always is, 'that something which should come through an original witness is sought to be put in at second hand, by one to whom it has been told, one who is not a witness properly speaking, who did not perceive it and cannot therefore testify to it, but only to the fact that somebody said so. It would operate to nullify the requirement that witnesses should personally appear and testify publicly in court, if the statements of the original perceiver could be got in through another person; and it was always the rule that witnesses should thus publicly appear and testify.' " Jones Commentaries on Evidence (2d ed.), § 1093.

Holding that the trial court correctly refused to admit in evidence a carbon copy of a letter written by an officer of a bank to the appellant, stating that the bank, on behalf of the appellant, had sent three hundred dollars to a certain party, we stated in *Peterson v. Mohammed,* 113 Wash. 117, 193 Pac. 215:

"Whether such a letter had been written was unimportant. The important thing was whether the bank

had sent $300 of appellant's money to Ali Mohammed, for the proof of which the instrument was not proper because it was hearsay.''

Manifestly, the letter received by respondent from his brother, by itself, does not prove the statements therein contained as to the monthly rental received from the California property. Such evidence was not competent to prove the rental value of that property. The letter and telegram should have been excluded.

The evidence of false representations, to prevail, should be not only strong and clear, but also competent. There is no competent evidence in the case at bar to prove the monthly rental of the Los Angeles residence. The finding of the trial court that Said falsely represented that that property was rented for one hundred dollars a month is not sustained by the evidence; therefore the judgment is reversed, and the action dismissed.

MITCHELL, C. J., FRENCH, PARKER, and MAIN, JJ., concur.